**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| CHRISTOPHER STEWART, | Case No. 2:22-cv-01757-RFB-BNW |
| Petitioner, | **ORDER** |
| v. | |
| CALVIN JOHNSON, *et al.*, | |
| Respondents. | |

In Petitioner Christopher Stewart's 28 U.S.C. § 2254 habeas corpus petition, he challenges numerous convictions—including kidnapping, robbery, and sexual assault—by arguing ineffective assistance of trial counsel (ECF No. 19). Respondents move to dismiss the petition because it is untimely, unexhausted, and/or procedurally barred (ECF No. 30). Stewart then filed a motion for discovery (ECF No. 41). Because the Court concludes that Stewart is entitled to equitable tolling of the statute of limitations, the motion to dismiss is denied. The Court defers a decision on whether the claims are procedurally defective. The motion for discovery is denied as moot.

**I.     PROCEDURAL AND FACTUAL BACKGROUND**

In August 2017, in the Eighth Judicial District Court of Clark County, Nevada, a jury convicted Stewart of conspiracy to commit robbery, two counts of robbery, burglary, first-degree kidnapping resulting in substantial harm, two counts of first-degree kidnapping, two counts of battery with intent to commit robbery, battery resulting in substantial bodily harm, battery with intent to commit sexual assault, and three counts of sexual assault. See ECF No. 28-13. Stewart and an accomplice were found guilty of attacking, beating, and robbing a couple outside of a Las Vegas convenience store. Stewart was also found guilty of sexually assaulting the female victim. See ECF No. 30 at 2. The state district court sentenced Stewart to an aggregate term of 43 years to

life. See ECF No. 28-39. Judgment of conviction was entered on November 2, 2017. See id.

The Nevada Court of Appeals affirmed Stewart's convictions in May 2019, and remittitur ultimately issued on October 10, 2019. See ECF Nos. 29-9 & 29-16. Stewart filed a state postconviction habeas petition through retained counsel on October 15, 2020. See ECF No. 29-22. The Nevada Court of Appeals denied his petition as untimely and therefore procedurally barred in November 2021. See ECF No. 29-54.

Stewart dispatched his federal habeas petition for filing in October 2022. See ECF No. 6. The Court granted his motion for appointment of counsel, and through the Federal Public Defender ("FPD") he filed an amended petition on June 20, 2024. See ECF No. 19. The petition raises three counts of ineffective assistance of trial counsel, alleging:

> Ground 1: Counsel failed to file a motion to sever the trial based on antagonistic defenses in violation of Stewart's Sixth and Fourteenth Amendment rights.
>
> Ground 2: Counsel failed to move to dismiss a juror or seek a mistrial based on juror misconduct.
>
> Ground 3: Counsel failed to request that the DNA evidence be compared to the co-defendant's DNA.

ECF No. 19 at 5–14.

Respondents now move to dismiss the petition on the basis that the original and amended petition are both untimely, and because the petition is unexhausted and/or procedurally barred. See ECF No. 30.[1] After Respondents moved to dismiss, Stewart filed a motion for discovery.[2]

## II.  DISCUSSION

### A. AEDPA Statute of Limitations and Equitable Tolling

The Antiterrorism and Effective Death Penalty Act ("AEDPA") imposes a one-year statute of limitations on the filing of federal habeas corpus petitions. See 28 U.S.C. § 2244(d). The one-year time limitation can run from the date on which a petitioner's judgment became final by conclusion of direct review, or the expiration of the time for seeking direct review. See id. § 2244(d)(1)(A).

---

[1] Stewart opposed, and Respondents replied. See ECF Nos. 38 & 50.
[2] Respondents opposed, and Stewart replied. See ECF Nos. 51 & 52.

A properly filed petition for state postconviction relief can toll the period of limitations. See id. § 2244(d)(2).

The parties agree that Stewart's state habeas petition was filed several days late on or around October 16, 2020. See ECF No. 30 at 3; ECF No. 38 at 4. On November 5, 2021, the Nevada Court of Appeals affirmed the district court's order denying the petition. The Nevada Supreme Court issued remittitur on November 30, 2021. "When a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)." Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005) (cleaned up). Here, Stewart failed to file a "properly filed" petition within the meaning of the statutory tolling provision of the AEDPA. See 28 U.S.C. § 2244(d)(2). Hence, Stewart failed to toll the days that elapsed between January 8, 2020, and October 16, 2022—when he submitted his *pro se* petition. See Pace, 544 U.S. at 412–16. Stewart agrees that the AEDPA limitations period expired on January 8, 2021. See ECF No. 38 at 4. So Stewart's October 16, 2022, federal petition was about one year and nine months late.

Stewart argues that he is entitled to equitable tolling of the statute of limitations due to his counsel's egregious misconduct. See ECF No. 38 at 4–22. A petitioner may be entitled to equitable tolling of the AEDPA limitations period if he can show "'(1) that he has been pursuing his rights diligently, and that (2) some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (citation omitted). However, an "external force"—not mere oversight, miscalculation, or negligence—must have caused the untimeliness. See Velasquez v. Kirkland, 639 F.3d 964, 969 (9th Cir. 2011) (quotation omitted). In addition, a causal relationship must exist between the extraordinary circumstance and the late filing. See e.g., Bryant v. Ariz. Att'y Gen., 499 F.3d 1056, 1061 (9th Cir. 2007). Equitable tolling is "unavailable in most cases," Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999) (citation omitted), and "the threshold necessary to trigger equitable tolling . . . is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002). A petitioner "must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time for filing his claim in federal court." Smith v. Davis, 953 F.3d 582, 598–599 (9th Cir. 2020).

Attorney misconduct can be an extraordinary circumstance. While "garden variety claim[s] of excusable neglect" do not necessarily constitute an extraordinary circumstance, see Holland, 560 U.S. at 651–652 (citation omitted), attorney misconduct, when sufficiently egregious, can rise to the level of extraordinary circumstances. See Luna v. Kernan, 784 F.3d 640, 646–48 (9th Cir. 2015); *accord* Holland, 560 U.S. at 651 ("professional misconduct that . . . amount[s] to egregious behavior . . . create[s] an extraordinary circumstance that warrants equitable tolling"); Porter v. Ollison, 620 F.3d 952, 960 (9th Cir. 2010) (interpreting Holland to treat "violations of canons of professional responsibility" as evidence that an attorney's conduct was "extraordinary"); Spitsyn v. Moore, 345 F.3d 796, 800–802 (9th Cir. 2003) (finding "extraordinary circumstances" sufficient to warrant equitable tolling where counsel failed to file client's habeas petition and ignored communications from client and client's mother).

Here, the Nevada Court of Appeals affirmed Stewart's convictions in May 2019. After Stewart's petition for review with the Nevada Supreme Court and petition for *en banc* reconsideration were both denied, remittitur ultimately issued on October 10, 2019. Stewart, through appellate counsel, filed an untimely motion for stay of remittitur in January 2020, asking the court to stay the remittitur so that he could petition the U.S. Supreme Court for a writ of certiorari. The Nevada Supreme Court denied the motion. Stewart's counsel then filed a motion for recall of remittitur in February 2020. The Nevada Supreme Court denied the motion on February 27, 2020. So, the operative date from which to calculate the deadline for his state post-conviction petition remained the date remittitur issued on the affirmance of his convictions: October 10, 2019.

Stewart sent a letter to the state district court clerk titled "To: State Bar of Nevada" dated June 30, 2020, complaining that his counsel violated ethical standards during trial and on appeal. The state court clerk received a letter from Stewart's mother on July 13, 2020, that was addressed to his trial/appellate counsel and stated that it was in reference to "ineffective and incompetent decisions made by you and your firm for my son's case."

Stewart, through retained counsel Craig Mueller, filed his state habeas petition on October 15, 2020. He alleged that his trial counsel was ineffective for failing to excuse a prospective juror

- 4 -

during *voir dire*, not moving to dismiss the juror, and failing to join his co-defendant's motion for a mistrial. He also asserted that counsel was ineffective in her handling of the DNA evidence. The State filed a response to the petition, arguing that it should be denied as procedurally barred because it was five days untimely and that Stewart failed to demonstrate cause and prejudice to overcome the procedural default. The State also argued that Stewart's claims lacked merit and that he failed to show that he was prejudiced under Strickland v. Washington, 466 U.S. 668 (1984). Counsel for Stewart filed a reply, stating:

> The remittitur in this case was issued by the Nevada Supreme Court on October 10, 2019. Petitioner relates that he received notice from his then-counsel that the Supreme Court had stayed the remittitur on October 20, 2019, while she discussed with Petitioner his right to exhaust state court remedies. Present counsel has not been able to confirm this and notes that then-counsel did file a motion to stay the remittitur on January 21, 2020. This motion was later denied.
>
> In reviewing the file in this case, counsel noted that according to the District Court Clerk's register of actions in this case, the remittitur was filed on October 16, 2019, along with the Clerk's Certificate, Order Denying Petition for Review and Order of Affirmance. It was this date that counsel used to calculate the one-year deadline for filing the petition. This led to the five-day late filing. This delay was neither intentional nor negligent. Counsel's file did not contain a copy of the original remittitur, only a copy of the Order of Affirmance.

ECF 29-26 at 3–4.

The state district court denied the petition as time barred because it held that Stewart failed to show cause and prejudice to overcome the default. The court also addressed the merits of the claims, finding that Stewart failed to demonstrate that his counsel was deficient or that he suffered prejudice.

Stewart appealed the denial of the petition in *pro se*, arguing only that his counsel was ineffective for failing to file his petition on time. The Nevada Court of Appeals affirmed the denial on November 5, 2021:

> Stewart argues the district court erred by denying his petition as procedurally barred because postconviction counsel was ineffective for failing to file his petition on time. Because the appointment of postconviction counsel was not statutorily or constitutionally required, *see Crump v. Warden*, 113 Nev. 293, 303, 934 P.2d 247, 253 (1997); *McKague v. Warden*, 112 Nev. 159, 164, 912 P.2d 255, 258 (1996), Stewart was not entitled to the effective assistance of postconviction counsel, *see*

*Brown v. McDaniel*, 130 Nev. 565, 569, 331 P.3d 867, 870 (2014). Therefore, his claim did not provide good cause to overcome the procedural bars, and we conclude the district court did not err by denying the petition as procedurally barred.

ECF No. 29-54 at 2–3.

Stewart then sent a letter to the state clerk on November 10, 2021, asking for the docket sheet for his case. In May 2022, Stewart sent another letter to the clerk asking for the court minutes for his case. In August 2022, Stewart initiated a claim for a fee dispute with the State Bar of Nevada.[3] On September 8, 2022, Stewart sent a letter to the state clerk asking for the remittitur for the affirmance of his convictions, stating that he needed it "ASAP" to file his federal petition. Stewart then filed his federal petition on October 16, 2022.

Stewart filed a declaration in support of his opposition to the motion to dismiss, arguing that he is entitled to equitable tolling of the federal limitation period. He states the following: the last motion to recall remittitur was denied on February 27, 2020. "Once that litigation was over, [he] wanted to file a state postconviction petition in state court." Shortly after, the Nevada Department of Correction's facilities were locked down due to the C0VID-19 Pandemic. Between March 2020 and approximately September 2020, he was housed at Lovelock Correctional Center; it was impossible to do legal work. Inmates had no access to "anything," including the law library. No legal calls were allowed, and it was very difficult to send or receive any legal mail. As soon as C0VID restrictions started to ease up, in late summer 2020, he reached out to another inmate, Eric, for help. He paid Eric to review his case who told him that his state postconviction deadline was October 10, 2020. Eric pointed out that in the last two motions for stay and recall of remittitur, Stewart's appellate counsel had indicated that remittitur issued on October 10, 2019.

Upon learning the deadline was approaching, Stewart reached out to family to help him hire counsel to file the petition. Stewart had a consultation call with family members and attorney Craig Mueller around September 1, 2020. Stewart told him on that call that the filing deadline was October 10, 2020. Mueller stated that he would begin work on the petition as soon as the retainer was paid. Stewart specifically asked Mueller if he was able to file the petition by the deadline, and

---

[3] The State Bar Fee Dispute Coordinator indicated in a letter dated May 3, 2023, that mediation had been unsuccessful.

Mueller said yes. Stewart and family members frequently spoke with Mueller. Family members paid the retainer in September and early October. After they paid the retainer, Stewart and family members repeatedly contacted the office regarding the status of his petition, but it became very difficult to get in touch with Mueller or anyone in the office. Stewart told office staff that the petition had to be filed by October 10; Mueller's paralegal told him the deadline was October 16. The petition was filed on October 15.

When Stewart received a copy of the petition, he called Mueller's office to complain that it was untimely. Mueller's office told him that it was not time-barred and that if there was a timeliness issue, they could simply amend the petition. He also pointed out other mistakes in the petition, which were never corrected. After the State moved to dismiss the petition as untimely, Stewart wrote a letter to Mueller in December 2020 again complaining about the untimeliness of the petition. The State's motion was consistent with Stewart's understanding that the petition had been due on October 10. After the dismissal of the petition as untimely was affirmed, he began to take steps to file his federal petition. He wrote letters and filed motions in the state district court seeking to obtain documents from the case and Mueller's file. He never received Mueller's file. He also filed a fee dispute with the Nevada State Bar in August 2022.

Stewart's uncle, mother, and a friend provided declarations nearly identical to each other that describe the family's discussions with, and hiring, of Mueller. His uncle lived in California, and his mother and friend lived in Missouri. None of those declarations include specific dates, though they describe the same process of hiring counsel, and that they had difficulty reaching counsel after they paid him. They stated that they contacted the office many times because they knew of the upcoming deadline.

Stewart included as an exhibit a June 2020 letter to Eighth Judicial District Clerk of Court and the Nevada State Bar complaining that his trial and appellate counsel was ineffective in several specific ways. He also includes documents from the fee dispute claim he filed with the Nevada State Bar. The documents include copies of receipts indicating that Mueller received payments from Stewart on September 2, 13, and October 9, 2020.

Stewart asks the Court for leave to conduct limited discovery related to his equitable tolling

1  arguments. He seeks prison call and mail logs that would potentially have a record of his calls to
2  Mueller and might show more outgoing mail that was not recorded. Based on Stewart's
3  recollections and the research by an FPD investigator, Stewart believes that the inmate who helped
4  him is Eric Montoya, inmate #51498. Stewart asks that Respondents be directed to make Montoya
5  available for deposition.

### B. Stewart Has Demonstrated that Equitable Tolling Is Warranted.

In Holland v. Florida, the Court held that counsel's misconduct in a capital case constituted an "extraordinary circumstance" that warranted equitable tolling because it was not "garden variety," but far more serious. See Holland, 560 U.S. at 651–652. Holland had presented court filings, numerous letters to the state supreme court, and extensive correspondence between him and his state post-conviction counsel over many years. Holland sent many, many letters to counsel, always asking for the status of the appeal of his state post-conviction petition, asking for the necessary information to determine the federal statute of limitations computation, and directing counsel to timely file a federal petition. Counsel grew increasingly unresponsive. Holland also filed a complaint with the state bar association. When Petitioner finally learned that the state supreme court had issued a final determination in his case, he filed his own *pro se* federal petition the very next day.

While Stewart does not present the volume of documentation that the Supreme Court had reviewed in Holland, the Court concludes that he has demonstrated that attorney misconduct in his case was so egregious as to constitute an extraordinary circumstance. First, his appellate attorney filed two untimely motions to stay and recall the remittitur on the affirmance of his direct appeal. So even though the motions themselves and orders denying the motions stated that remittitur issued on October 10, 2019, it was not unreasonable for Stewart to think that there was no action to take with respect to filing a state post-conviction petition until the last motion was denied in February 2020.

Second, Stewart had little, to no, opportunity to ascertain the next steps—including potentially retaining post-conviction counsel—before C0VID lockdowns and strict restrictions were implemented in March 2020. It is well-documented and undisputed that the pandemic

1  restrictions and lockdowns wildly disrupted inmates' ability to pursue litigation. Stewart relays
2  that once restrictions began to ease, he sought help from a fellow inmate who pointed out that court
3  orders indicated that his state post-conviction filing deadline was October 10, 2020. He describes
4  in detail how specific family members helped him contact Mueller. He also describes in detail his
5  conversations with Mueller and how he and family members and friends repeatedly informed
6  Mueller of the filing deadline. Stewart asserts that Mueller specifically affirmed that he could file
7  the petition by October 10. Receipts presented in the state bar fee dispute proceedings show that
8  Stewart made several payments to Mueller in September and October, prior to the October 10
9  deadline. Stewart describes specifically how he tried to explain to Mueller's paralegal that the
10 deadline was in fact October 10, not October 16, as the paralegal maintained. While the remittitur
11 issued on October 10, the receipt for remittitur is dated October 16, 2019. Mueller later
12 acknowledged that his office had incorrectly calculated the deadline from the date of the receipt
13 for remittitur.

14 Stewart describes how he contacted Mueller after the petition was untimely filed, and how
15 Mueller informed him, incorrectly, that an amended petition could be filed to rectify the timeliness
16 issue. Stewart presents several letters that he sent to state court asking for documents from his case.
17 He maintains that Mueller never gave him his case file.

18 On these specific facts and the totality of the circumstances—including appellate counsel's
19 actions, the pandemic restrictions, state post-conviction counsel's assurances that the petition
20 would be timely filed by October 10, Stewart and family members' repeated attempts to confirm
21 that the petition would be filed by October 10, and the difficulty in contacting post-conviction
22 counsel after the retainer was paid—the Court finds that Stewart acted diligently and that
23 extraordinary circumstances prevented him from timely filing a federal petition. See Holland, 560
24 U.S. at 651–652; Bryant, 499 F.3d at 1061; Spitsyn, 345 F.3d at 800–802. Stewart is, therefore,
25 entitled to equitable tolling of the AEDPA statute of limitations. Accordingly, the motion for leave
26 to conduct discovery related to equitable tolling is thus denied as moot.

27 **C. Procedural Default**
28 Respondents also argue that the petition should be dismissed because ground 1 is

1  unexhausted/technically defaulted and that grounds 2 and 3 are procedurally defaulted. Petitioner
2  acknowledges that ground 1 is unexhausted and should be considered technically exhausted but
3  procedurally defaulted because if Stewart attempts to return to state court to present the claim, the
4  courts would find the claims procedurally barred. See Dickens v. Ryan, 740 F.3d 1302, 1317 (9th
5  Cir. 2014).

6  With respect to procedural default, a state prisoner who fails to comply with state-law procedural requirements in presenting his claims in state court is barred by the adequate and independent state ground doctrine from obtaining a writ of habeas corpus in federal court. See Coleman v. Thompson, 501 U.S. 722, 731–32 (1991). Where such a procedural default constitutes an adequate and independent state ground for denial of habeas corpus, the default may be excused only if "a constitutional violation has probably resulted in the conviction of one who is actually innocent," or if the prisoner demonstrates cause for the default and prejudice resulting from it. See Murray v. Carrier, 477 U.S. 478, 496 (1986).

Ineffective assistance of post-conviction counsel may serve as cause with respect to a claim of ineffective assistance of trial counsel. See generally Martinez v. Ryan 566 U.S. 1 (2012). "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Id. at 17; see also Trevino v. Thaler, 569 U.S. 413, 423 (2013) (regarding the showing necessary to overcome a procedural default under Martinez).

Here, Stewart argues that he can demonstrate cause and prejudice to overcome the procedural bars of his three claims of ineffective assistance of trial counsel because his state postconviction counsel was ineffective and the claims are substantial. Respondents dispute that his postconviction counsel performed deficiently and that he was prejudiced under Strickland v. Washington, 466 U.S. 668 (1984). Respondents also dispute that the claims are substantial under Martinez.

Because the question of procedural default is intertwined with the underlying merits of the

claims, full merits briefing may assist the Court with its determinations and best serves judicial efficiency. Therefore, the Court defers a decision on whether the claims are procedurally defaulted from federal review to the merits adjudication.

### III. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Respondents' Motion to Dismiss (ECF No. 30) is **DENIED**. A decision on whether the petition is procedurally barred is deferred to the merits review.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Discovery (ECF No. 41) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Respondents have 60 days from the date of this order to file an answer, including any procedural default arguments.

**IT IS FURTHER ORDERED** that Petitioner has 45 days from the filing of the answer to file a reply.

**DATED:** September 28, 2025.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**